Malcolm BOURGEOIS, Plaintiff,

v.

Richard HONGISTO, Commissioner, Department of Correctional Services; Stephen Dalsheim, Superintendent, Ossining Correctional Facility; Doctor Thomas G. Rigney, Physician, Ossining Correctional Facility; Mrs. Evelyn Oakley, Nurse Administrator, Ossining Correctional Facility, and Commissioner of the New York State Health and Hospital Corp., Defendants.

No. 79 Civ. 4844 (KTD).

United States District Court,
S. D. New York.

March 28, 1980.

Malcolm Bourgeois, pro se.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants; Charlotte C. Lee, Deputy Asst. Atty. Gen., New York City, of counsel.

OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Malcolm Bourgeois, is presently incarcerated at the Clinton Correctional Facility. He has commenced the instant suit, *pro se*, against Richard Hongisto, Commissioner of the Department of Correctional

Services,[1] Stephen Dalsheim, Superintendent of the Ossining Correctional Facility, Doctors Benjamin Dyett and Thomas Rigney, two physicians at the prison facility, Evelyn Oakley, formerly a Nurse Administrator at the facility, and The Commissioner of the New York State Health and Hospital Corporation.

Plaintiff's original complaint, filed in September, 1979, charged, in substance, that while at the Ossining facility[2] he was denied adequate medical care in violation of his constitutional rights. Thereafter, in December, 1979, the defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment.

Plaintiff has recently filed an amended complaint, dated February 11, 1980, naming the same individuals as defendants. Again the complaint charges that plaintiff was subjected to grossly inadequate medical care while incarcerated at Ossining. This time, however, plaintiff has included the dates of various alleged incidents and greater factual specificity with respect thereto.

In addition to filing an amended complaint, plaintiff has also moved for the appointment of an attorney, the production of various documents and an order directing the method of service upon the defendants herein.

Defendants have renewed their motion with respect to plaintiff's amended complaint.

■ Before a *pro se* complaint will be dismissed for failure to state a claim, it must appear beyond doubt that, assuming the truth of plaintiff's allegations, he can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

The essence of plaintiff's amended complaint is that defendants, by persistently denying him necessary medical care and supervision, have subjected him to cruel and unusual punishment in violation of the Eighth Amendment, as made applicable to the States by the Fourteenth.

■ There is no question that " 'the evolving standards of decency that mark the progress of a maturing society,' "mandate that the state provide adequate medical care for those incarcerated in its prison facilities. *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), *quoting Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). However, only where the state's deliberate indifference to the serious medical needs of a prisoner causes the "unnecessary and wanton infliction of pain" will the conduct give rise to a valid claim of cruel and unusual punishment. *Estelle v. Gamble, supra*, 429 U.S. at 104, 97 S.Ct. at 291. To be sure, allegations of mere medical malpractice are not of constitutional dimension simply because the victim is a prisoner. *Id.* at 106, 97 S.Ct. at 292.

■ Applying this standard to the case at bar, it is evident that plaintiff has failed to state a valid claim under § 1983. Indeed, at best plaintiff has stated a claim charging medical malpractice. The specific allegations of medical maltreatment are as follows.

There is no dispute that when transferred to Ossining plaintiff was suffering from Chronic Thrombophlebitis in his left leg. Nor is there any doubt that plaintiff was prescribed the identical medication he had been taking prior to his incarceration while under the care of a private physician. Plaintiff does charge, however, that he was not permitted to remain at the infirmary ward upon his arrival at Ossining. Rather, he was informed that he would be housed

---

1. Robert Hongisto has been replaced by Thomas Coughlin III as Commissioner of the Department of Correctional Services. Since Mr. Hongisto was sued in his official capacity only, the real party in interest is now Mr. Coughlin.

2. The plaintiff is presently incarcerated at the Clinton Correctional Facility and has commenced a virtually identical § 1983 action against the Department of Correctional Services and various medical employees of the Clinton Facility.

with the general population and continue to receive his daily medication. However, since plaintiff refused to take his medication under these circumstances, he alleges that he was in effect denied medication.

Plaintiff further charges that although he was eventually admitted to the infirmary ward and monitored daily, Dr. Dyett and Nurse Oakley refused to discuss either his physical condition or the results of the numerous tests performed upon him.

Finally, plaintiff charges that he was discharged from the infirmary by Dr. Dyett for other than legitimate medical purposes and was subsequently not provided with prompt medical treatment upon demand.

The medical records at Ossining indicate nothing unusual about the course of treatment afforded plaintiff. On the contrary, they bear witness to the numerous treatments of plaintiff for his medical problem and the staff's continued efforts to insure that plaintiff ingested his prescribed medication. In fact, the records are replete with statements to the effect that plaintiff "refuses to take his medication in his cell" or failed to present himself at the infirmary to receive his daily medication. In short, the only conclusion to be drawn from these records is that plaintiff was anything but a cooperative patient.

Plaintiff now comes into federal court because he refused to take his medication unless he was housed in the infirmary and he was not consulted prior to his discharge therefrom.

It is within the realm of possibility, albeit improbable, that plaintiff should have been admitted to the infirmary initially and, after his eventual admission, was prematurely discharged. Such conduct, however, would amount to nothing more than medical malpractice. Indeed, the decision to admit and discharge a patient is very often one within the province of the treating physician. Generally, private patients in hospitals have very little voice with respect to admissions and discharges. It is a decision largely left to the physician. If plaintiff was not promptly admitted or was improperly discharged, this was an error in the medical

judgment of the attending physicians. It is not, however, cruel and unusual punishment.

Likewise, if the treating physician failed to discuss plaintiff's test results and physical condition with him, this states a claim, if at all, for malpractice.

Suffice it to say that there is nothing in the amended complaint to indicate that defendants were indifferent to plaintiff's medical condition or that plaintiff suffered the unnecessary and wanton infliction of pain. On the contrary, the only indifference exhibited in the case at bar was that of the plaintiff to the numerous attempts to treat him for this condition.

Accordingly, it being evident that plaintiff can prove no set of facts sufficient to state a valid § 1983 claim, the amended complaint is dismissed and the balance of plaintiff's motions are denied.

SO ORDERED.